NOTICE
Decision filed 06/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241171-U

NO. 5-24-1171

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 24-CF-382 |
| | ) | |
| VAHJI T. SMITH, | ) | Honorable |
| | ) | Lindsey A. Shelton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions are affirmed where he failed to prove trial counsel's actions were not matters of trial strategy. His sentence of a total of 10 years' imprisonment is also affirmed where it was not excessive under the circumstances of this case and defendant's history.

¶ 2    Defendant, Vahji T. Smith, appeals his convictions and sentences, arguing defense counsel was ineffective and his sentence was excessive. For the following reasons, we affirm.

¶ 3                    I. BACKGROUND

¶ 4    On March 4, 2024, defendant was charged, through information, with home invasion (720 ILCS 5/19-6(a)(2) (West 2022)), aggravated domestic battery (*id.* § 12-3.3(a-5)), domestic battery with four prior domestic battery convictions (*id.* § 12-3.2(a)(1)), and unlawful violation of order

1

of protection with a prior domestic battery conviction (*id.* § 12-3.4(a)(1)). All charges regarded events occurring on March 3, 2024, and involved the same victim, Melissa Johnson.

¶ 5    Prior to these offenses, on December 26, 2023, in case No. 23-CF-1979, defendant was charged with several domestic violence offenses, alleging that on December 24, 2023, defendant placed his hands around Johnson's throat and applied pressure. On February 28, 2024—three days before the instant offenses—defendant was sentenced to probation in case No. 23-CF-1979 for a Class 2 felony domestic battery with four prior domestic battery convictions. As a result of the events on March 3, 2024, defendant was found guilty of a probation violation and was subsequently sentenced to three years' imprisonment in case No. 23-CF-1979.

¶ 6    On September 3, 2024, in the current case, the State filed a motion *in limine*, requesting the ability to admit evidence of defendant's prior criminal history of domestic violence pursuant to section 115-7.4 of the Code of Criminal Procedure (Code) (725 ILCS 5/115-7.4 (West 2022)). Specifically, the State wanted to admit the certified record of the conviction for a domestic battery with four prior domestic battery convictions in case No. 23-CF-1979, the information, and officer's sworn statement in that case, as well as Melissa Johnson's testimony as to the events surrounding the prior conviction. Attached to the motion was the information for case No. 23-CF-1979 showing a charge of domestic battery with four prior domestic battery convictions against defendant. The officer's sworn statement for case No. 23-CF-1979 was also attached to the motion. It indicated that officers responded to a domestic violence report on December 24, 2023, at 812 S. Belmont, Decatur, Illinois. Upon arrival, Johnson informed officers that she and defendant got into a verbal argument and defendant choked her with two hands. She advised that the choking lasted around five minutes and she was not able to breathe. Johnson also informed officers that defendant broke

2

her phone while she was trying to call the police. Officers observed a half inch scratch on the front of Johnson's neck and that her phone screen was cracked.

¶ 7    On September 16, 2024, defendant's trial began. Prior to jury selection, the court addressed the State's motion *in limine*. Defense counsel argued that granting the State's motion would allow highly prejudicial evidence to be admitted against defendant. Defense counsel stated the court must then determine whether the probative value of the evidence outweighed the prejudicial effect. Defense counsel argued the prior conviction was for insulting and provoking conduct and not for strangulation even though strangulation was what was provided in the sworn statement. Defense counsel further noted the case was negotiated primarily because Johnson was uncooperative. Defense counsel contended this was a much more serious incident and to simply paint defendant as a bad man would be error.

¶ 8    The court found that allowing the prior conviction as well as testimony to the prior incident as alleged in case No. 23-CF-1979 would be more probative than prejudicial and was allowed under section 115-7.4 of the Code. The court noted that the prior conduct involved the same individual as in this case, occurred close in time, and was a domestic battery incident even if it was not a strangulation incident as alleged in this case.

¶ 9    The parties selected the jury, and the State began its case. Officer Jared Sikowski testified that he responded to a domestic call at 812 S. Belmont, Decatur, Illinois, on March 3, 2024. When he arrived, he heard indistinct yelling from inside. The front door was broken and pushed in. Officer Sikowski pushed the door open and announced himself. As he turned the corner, he observed defendant push Johnson to the ground. Officer Sikowski testified that at that time, he pointed his firearm at defendant and defendant immediately raised his hands. Officer Sikowski then took defendant into custody.

¶ 10 Officers Sikowski stated that he observed some marks and abrasions on Johnson's face and that she was quite shaken up at that time. He identified State exhibit No. 3 as a picture he took of Johnson. Officers Sikowski stated that he saw blood on her upper right eye, the right side of her face, and her lip, as well as red or purple marks along her neck. Officer Sikowski then identified State exhibit No. 2 as a picture of the front door of Johnson's residence that he observed to be broken. The exhibits were admitted into evidence and published to the jury. Officer Sikowski further testified that when he was with defendant, defendant mentioned Johnson had an order of protection on him.

¶ 11 On cross-examination, Officer Sikowski stated that defendant also had blood on his face, but it was caused by the police. He further agreed that defendant appeared to be intoxicated and Johnson did not. Officer Sikowski identified Defense exhibit No. 1 as a picture that he took of Johnson that evening. He agreed Defense exhibit No. 1 fairly and accurately depicted Johnson's neck at that time but said there was a better photo of the area.

¶ 12 On redirect examination, Officer Sikowski testified that the Defense exhibit No. 1 did not fully show the injuries of Johnson. He confirmed that he observed redness or some form of bruising on Johnson's neck.

¶ 13 Melissa Johnson testified that she lived at 812 S. Belmont Avenue, Decatur, Illinois. She stated that she used to date defendant and was dating defendant at the time of the offense. Johnson testified there was an incident on New Year's Eve of 2023 where defendant choked her and broke her phone so she could not call the police. She further stated that as a result of that incident, defendant went to jail and was released on February 28, 2024. In the interim, Johnson obtained a two-year order of protection against defendant. The court took judicial notice of the order of protection in case No. 23-OP-933 as well as State exhibit No. 5, which was the certified record for

4

the order of protection including the petition for the order of protection and certified copy of the order of protection.

¶ 14    The petition for the order of protection included Johnson's sworn statement, which stated that on November 15, 2023, defendant threatened her to not call the cops. She ran into her room and dialed 911 when defendant kicked in the door to her room. She ran to the neighbor's house to wait until the police arrived. On December 8, 2023, defendant got mad and choked Johnson because she was not tired and had the music on while he was trying to sleep. When she tried to call the police, defendant broke her phone and began to choke her again. The next day, on December 9, 2023, she went to church and her pastor and a lady told her to get a restraining order. On December 10, 2023, defendant again got mad because he believed Johnson was being too loud and started to yell in her face. Johnson left and called the police once defendant gave her some space. Her statement also indicated that the police could not do anything because she lied about him staying at her residence although no one asked if he could live there. It further stated that after that incident, she and defendant came to an agreement that when he got his money, he would leave her house. On December 23, 2023, defendant woke up still high and drunk from the night before and got mad because he thought Johnson did not save him any food. Johnson laughed as she walked to the kitchen to show him the food. Defendant grabbed her by her neck and asked her if she thought it was funny. He also told her that he would break her phone if she called the police. Defendant eventually let her go and she went to church. Johnson again told her pastor what happened and her pastor told her that his wife would take her to get a restraining order the following Tuesday. In the early morning of December 24, 2023, around 1 a.m., Johnson awoke and turned on the television. Defendant started yelling at her, calling her dumb. Defendant got in Johnson's face, grabbed her arms, and unsuccessfully tried to get to her neck. Johnson eventually

5

ran out the front door. The statement further indicated that defendant initially tried to chase her but eventually went back to her house and locked her out. She had no coat and shoes. Johnson called the police.

¶ 15    At trial, Johnson testified that on March 3, 2024, defendant came to her house to retrieve his belongings. She stated he was supposed to come with police but came by himself. Johnson later clarified that defendant called her earlier on March 3, 2024, and wanted to hang out and she allowed him to do so. When he came over, they sat in the living room and talked for an hour or two. Then defendant, alone, went to the store and brought back alcohol. Defendant then fell asleep for two or three hours. When he woke up, he was still drunk. They went to the store to get food and returned to her home. Defendant did not eat but took a blanket and his bicycle and left. He was gone for 10 to 15 minutes and then returned.

¶ 16    Johnson testified that she would not let defendant in at that time because he was drunk. Defendant then started kicking in her door and she threatened to call the police. Defendant stated that he did not care and kicked the door in. When defendant finally got in, he chased her to the back door, grabbed her hair, pulled her down, and dragged her. Defendant then put his hands around her neck, asking her if she called the cops. She told defendant she did not, but the police came in and caught defendant in the act. Johnson confirmed that defendant put his hands around her neck and that he choked her when he grabbed her from behind and turned her around. When he turned her around and released her from a headlock, he started choking her with his hands. She further testified that the choking affected her breathing.

¶ 17    The court then admitted State exhibit No. 1, which was an audio recorded phone call of Johnson's 911 call. Johnson also confirmed that her injuries displayed in State exhibit No. 3 were caused by defendant.

¶ 18    The State then asked the court to admit State exhibit No. 4, which was a certified record of conviction for defendant in case No. 23-CF-1979 for Macon County. The certified record included the information. These documents showed that defendant was convicted of domestic battery with four prior domestic battery convictions (720 ILCS 12-3.2(a)(1) (West 2022)) for putting his hands on Johnson's throat, applying pressure, and causing injury, on or about December 24, 2023.

¶ 19    The State rested and defense counsel moved for a directed verdict, specifically as to home invasion and unauthorized entry. Defense counsel argued defendant was hanging out with Johnson for three to five hours, eating and drinking together. Counsel further noted there could be a violation of an order of protection without being a home invasion and specifically requested the home invasion charge be dismissed. Counsel further argued that the remaining counts had adequate evidence to go forward. The State contended that even though defendant may have been at Johnson's home with permission earlier, the offense occurred when he came back to her residence and kicked the door in from the outside while Johnson refused to let defendant in the home and told defendant to leave. The court denied the motion for directed verdict.

¶ 20    The defense rested without presenting evidence. Closing arguments were provided. The State addressed, in both its initial and rebuttal closing arguments, defendant's prior domestic violence case in which he choked Johnson. The court then instructed the jury. During its instruction, the court provided Illinois Pattern Jury Instructions, Criminal, No. 3.14 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.14)—concerning a limiting instruction for evidence of other crimes and bad acts—and stated,

> "Evidence has been received that the defendant has been involved in an offense other than that charged in the information.

The evidence has been received on the issue of the defendant's identification, intent, motive, propensity and lack of mistake and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of the defendant's identification, intent, motive, propensity and lack of mistake."

¶ 21 While the jury deliberated, the court noted a sidebar that occurred during closing arguments concerning the fact that IPI Criminal No. 3.14 was not discussed during the jury instruction conference. The court stated it believed there was no objection to providing that instruction other than the continuing objection to the evidence. Defense counsel confirmed the court's understanding. The court stated the record should show IPI Criminal No. 3.14 was given and read to the jury.

¶ 22 The jury found defendant not guilty of aggravated domestic battery but found him guilty of home invasion, violation of an order of protection, and domestic battery. On September 19, 2024, defendant filed a motion requesting the court enter judgment notwithstanding the verdict or grant a new trial, arguing the State failed to prove defendant guilty beyond a reasonable doubt.

¶ 23 At the October 8, 2024, hearing, the court addressed defendant's motion notwithstanding the verdict or for a new trial. After hearing arguments, the court denied both motions.

¶ 24 The matter then proceeded to sentencing. The court took judicial notice of the evidence presented at trial and the presentence investigation report. The presentence investigation report showed that defendant had 10 prior felony convictions spanning from 1994 to 2023. Four of the ten prior felonies related to domestic violence or violations of orders of protection. The remaining felonies concerned drug offenses. The presentence investigation report also listed three violations

8

of probation conditions, three domestic battery misdemeanors convictions, a battery misdemeanor conviction, and a theft misdemeanor conviction. It stated that defendant advised he was employed full-time at Casey's in Decatur, Illinois, and his position would be held for him until he was released from custody. Defendant reported being a diabetic and taking insulin and pills to control his sugar levels.

¶ 25    No further evidence was submitted. Defendant provided a statement in allocution. He stated that he wanted to throw his mercy to the court and asked that it not take the rest of his time away from his grandchildren who did not deserve to have him absent from their lives. He asked the court to find it in its heart to give him some time to continue to be the grandfather that he started to become to his grandchildren.

¶ 26    The State argued that defendant not only violated an order of protection but was on parole at the time of the offenses. He broke a door down and caused harm to Johnson. The State noted defendant's criminal history. It contended there was no sense of responsibility or indication that defendant desired to be better. The State argued that an order of protection was not just a piece of paper and had to have "teeth to that." It requested the court sentence defendant to 25 years' imprisonment for home invasion to run concurrently with the other offenses.

¶ 27    Defense counsel argued that defendant was not on parole but on probation at the time of the offenses. Defense counsel acknowledged that defendant had four prior convictions from 2012, 2015, and 2023. She also acknowledged that defendant had an extensive criminal history but argued the history was almost 45 years old and there was a great lapse of time between defendant's youth during the 1990s and his most recent criminal history. Defense counsel argued mitigating factors included that both parties were drinking, defendant admitted to violating the order of protection, and defendant violated the order of protection with the consent of the victim. Defense

9

counsel further argued it was not as if defendant stopped Johnson or made threats to her. Defense counsel contended this was a situation that spiraled out of control over a long period of time. She further noted the defendant was found not guilty of the very serious Class 2 felony of aggravated domestic battery and accepted responsibility for the other domestic battery and violation of order protection. Defense counsel requested the court sentence defendant to six years of incarceration. In addition to the sentences for the offenses in this case to run concurrently, defense counsel also requested the court run any sentence in this case concurrent with the sentence in case No. 23-CF-1979.

¶ 28   The court stated it considered the parties' arguments, the presentence investigation report, and all statutory factors. Regarding the factors in aggravation, the court found defendant had a prior criminal history, including five prior domestic battery convictions and was unsuccessfully terminated from his most recent probation term for domestic battery to Johnson in case No. 23-CF-1979. The court found the sentence was necessary to deter others from committing the same crime and that defendant's conduct threatened serious harm based on evidence presented at trial. Regarding factors in mitigation, the court found the factors of defendant's health as alleged in the presentence investigation report and his employment were applicable. The court noted the home invasion was a non-probational offense and found probation on the domestic battery with priors and order of protection convictions would deprecate the seriousness of the offenses in light of all the circumstances. The court noted it was considering the evidence presented at trial regarding the same victim as she was able to testify to the prior domestic battery offense as well to this occurrence. It stated, "it is significant to the court that he had only been on probation for domestic battery to the same victim for five days when this occurred." For these reasons, the court sentenced defendant to 10 years for home invasion, 5 years for domestic battery, and 5 years for the violation

10

of order protection, all to run concurrently. The court further noted that the total 10-year sentence in this case would run concurrent with the sentence in case No. 23-CF-1979.

¶ 29    On October 9, 2024, defendant filed a motion to reconsider his sentence. Defendant contended his sentence was excessive because he had no significant prior incarceration, most of his criminal history was over 10 years old, the facts did not warrant such an overly punitive sentence, and the sentence was based on emotion and sympathy.

¶ 30    On October 15, 2024, the court held a hearing on defendant's motion to reconsider. Defense counsel stated she stood on her motion but further argued that defendant's prior incarcerations were more than 20 years ago. She acknowledged that he had criminal convictions since his incarceration but classified them as relatively low-level class four offenses. She argued the sentence in this case was excessive given the totality of the circumstances. The State said it would stand on its argument at sentencing. The court denied the motion to reconsider. Then, upon defense counsel's request, the court directed the clerk to file a notice of appeal on behalf of defendant.

¶ 31    On October 16, 2024, judgment was filed, sentencing defendant to 10 years' imprisonment for home invasion, 5 years for domestic battery with four prior domestic battery convictions, and 5 years for unlawful violation of order of protection with a prior domestic battery. All sentences were to run concurrently with one another and the sentence imposed in case No. 23-CF-1979.

¶ 32    Defendant's notice of appeal was filed on October 29, 2024. The date of the judgment or order appealed was listed as October 15, 2024. The seventh listed item in the notice of appeal stated, "If appeal is not from Conviction: Sentence, Motion to Reconsider Denied."

¶ 33                                II. ANALYSIS

¶ 34    On appeal, defendant argues that defense counsel provided ineffective assistance during his trial, counsel's errors amounted to cumulative error, and his sentence was excessive. Before

11

we address the merits of defendant's contentions, we must dispose of the State's argument that this court lacks jurisdiction over any challenge to defendant's convictions where the notice of appeal indicated defendant only appealed the sentence and motion to reconsider the sentence. Defendant acknowledges this shortcoming and has since requested a supervisory order from the Illinois Supreme Court. On August 13, 2025, the Illinois Supreme Court entered a supervisory order, directing this court to allow defendant "to amend the notice of appeal to reflect that he is appealing both his conviction and sentence." *People v. Smith*, No. 132116 (Ill. Aug. 13, 2025) (supervisory order). On October 21, 2025, pursuant to the Illinois Supreme Court's supervisory order, this court entered an order allowing defendant to file an amended notice of appeal. The same day, defendant filed an amended notice, appealing both his conviction and sentence. We therefore now have jurisdiction over both the conviction and sentence. *People v. Lewis*, 234 Ill. 2d 32, 37 (2009) (An appellate court has jurisdiction over the judgments or parts of judgments specified in the notice of appeal.).

¶ 35                       A. Ineffective Assistance of Counsel Claim

¶ 36    Turning to the merits, a criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To determine whether counsel provided ineffective assistance, we look to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). To prevail on a *Strickland* claim, "a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12

would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A] defendant must establish both prongs of the *Strickland* test, such that the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 37                                          i. Impeachment

¶ 38    Defendant first argues that counsel's decision to not impeach Johnson with her sworn statement in the petition for the order of protection (State exhibit No. 5) was unreasonable. He explains that the petition contains allegations stemming from six separate dates detailing either purported incidents of domestic violence or fallout after a purported domestic violence incident. He further explains that Johnon's testimony varied significantly from her sworn statement in the petition and the sworn statement of the officer who arrested defendant following the December 24, 2023, incident. Citing *People v. Salgado*, 263 Ill. App. 3d 238, 246-47 (1994), defendant contends there is no reasonable strategy in failing to utilize available and significant evidence to impeach the main occurrence witness.

¶ 39    The failure to impeach is usually a matter of trial strategy that cannot support an ineffective assistance of counsel claim. *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997). That presumption, however, is rebutted if counsel's actions were irrational or unreasonable. *People v. Bryant*, 391 Ill. App. 3d 228, 238 (2009).

¶ 40    In *Salgado*, a witness testified that he observed the defendant shooting on the night of the murder. *Salgado*, 263 Ill. App. 3d at 246. However, at the prior trial of the codefendants, the witness indicated that he did not see the defendant shooting on the night of the offenses. *Id.* On appeal, the court found that counsel's failure to utilize the prior testimony amounted to deficient performance. *Id.* at 247.

¶ 41    Unlike *Salgado*, however, the inconsistency here regarded separate instances of abuse at different times and did not regard defendant's action on the night of the instant offenses. Also, despite defendant's belief, unlike *Salgado*, the inconsistencies between Johnson's testimony and the two sworn statements regard *when* the prior events occurred. While the sworn statements include more details of the prior events than Johnson's testimony, her testimony was not necessarily inconsistent except for the date on when the acts occurred. Johnson remained consistent about the abuse occurring. Thus, *Salgado* is distinguishable. It is well established that sometimes counsel fails to object in order to avoid bringing further attention to the matter. *People v. Evans*, 209 Ill. 2d 194, 221 (2004) ("It is highly possible that defense counsel allowed the statement to pass without objecting to diffuse its importance, rather than object and draw further attention to the statement."). We find such reasoning applicable here, where the impeachment evidence would bring further focus to defendant's past bad acts. There were therefore sound strategic reasons for not impeaching Johnson with the order of protection.

¶ 42    We moreover note that defense counsel attacked Johnson's credibility by questioning her actions in allowing defendant to come into her home despite having an order of protection against him as well as highlighting the State's photographs that did not show neck injuries. The mere fact that the defendant "might have chosen a different approach to the cross-examination does not render counsel's cross-examination 'objectively unreasonable.' " *In re Commitment of Moore*, 2023 IL App (5th) 170453, ¶ 79. Defendant thus failed to show counsel provided objectively unreasonable assistance in this regard.

¶ 43    Defendant also argues counsel was ineffective for failing to object to the admission of State exhibit No. 5, the sworn statement in the petition for the order of protection in case No. 23-OP-0933—which discussed five prior incidents of domestic violence—and the jury instruction

14

regarding other bad acts. Defendant does not challenge the relevancy and admissibility of the prior order of protection. Rather, he challenges the details provided in the sworn statement based on hearsay, other crimes evidence, irrelevancy, violation of section 115-7.4 of the Code, and the evidence being highly prejudicial compared to the probative value.

¶ 44    To determine whether counsel's representation was insufficient, we must first decide whether the evidence was improperly admitted. In doing so, we keep in mind that an attorney's decision on what objections to lodge is usually a matter of trial strategy that is generally immune from an ineffective assistance of counsel claim. *People v. Jackson*, 2020 IL 124112, ¶ 106.

¶ 45    Irrelevant evidence is inadmissible and relevant evidence is admissible, except as otherwise provided by law. Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 46    "Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crime." *People v. Pikes*, 2013 IL 115171, ¶ 11. "The rationale for this rule is not that a defendant's bad character, as evinced by other bad acts, is irrelevant when he is charged with a crime." *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010). Appropriate purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Previous acts of domestic violence have been held to be relevant to prove absence of mistake or accident (*People v. Patterson*, 2013 IL App (4th) 120287, ¶ 85), intent, and proclivity to harm the victim. *People v. Chapman*, 2012 IL 111896, ¶ 33; *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 132. Illinois Rule

15

of Evidence 404(b) (eff. Jan. 1, 2011) further provides an exception by stating, evidence of other crimes or bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by sections 155-7.3, 115-7.4, 115-20 of the Code (725 ILCS 5/115-7.3, 115-7.4, 115-20) (West 2022))."

¶ 47     In cases involving domestic violence offenses, section 115-7.4 of the Code allows for the admissible of evidence of another offense of domestic violence for any relevant purpose. *Id.* § 115-7.4(a). Section 115-7.4 of the Code further directs,

> "In weighing the probative value of the evidence against undue prejudice to
>
> the defendant, the court may consider:
>
> (1) the proximity in time to the charged or predicate offense;
>
> (2) the degree of factual similarity to the charged or predicate offense; or
>
> (3) other relevant facts and circumstances." *Id.* § 115-7.4(b).

This section "permits the trial court to allow admission of evidence of other crimes of domestic violence to establish the propensity of a defendant to commit a crime of domestic violence if the requirements of the statute and of other applicable rules of evidence are met." *Dabbs*, 239 Ill. 2d at 295. It contains a relevancy requirement, acknowledges the probative value and prejudice balancing test, and provides specific considerations for such test. *Id.* at 290.

¶ 48     In light of the legal principles above, defendant's argument that prior instances of domestic violence were irrelevant because the other crimes evidence regards other instances of abuse is not well-taken. Indeed, such argument would be applicable to all other crimes evidence and would necessarily engulf the rule that other crimes evidence is admissible for any purpose other than propensity and the legislatively created exception in section 115-7.4 of the Code. Thus, evidence

of prior domestic violence offenses is admissible and relevant as propensity evidence, or any other relevant purpose, if it meets the requirements of section 115-7.4 of the Code.

¶ 49    Defendant does not dispute that the first two considerations under section 115-7.4(b) of the Code weigh in favor of admitting the evidence but argues that other facts and circumstances render the evidence more prejudicial than probative. Specifically, citing *People v. Jenk*, 2016 IL App (1st) 143177, ¶ 38, and *People v. Pizzo*, 2022 IL App (2d) 210073-U, ¶ 91, defendant argues that the evidence was inadmissible under section 115-7.4 of the Code because the statements were unverified, one-sided allegations lacking corroboration. We again disagree.

¶ 50    *Jenk* does not support defendant's position. The *Jenk* court affirmed the trial court's granting admission of three prior incidents of domestic violence. *Jenk*, 2016 IL App (1st) 143177, ¶¶ 38-41. While, in doing so, the appellate court recounted the fact that the trial court denied admission of three other incidents of domestic violence where the allegations were not corroborated, it did not address the propriety of denying admission of those incidents. *Id.* ¶ 38. *Jenk* also never addressed whether section 115-7.4 of the Code requires the party to corroborate the evidence of prior domestic violence offenses. *Pizzo*, 2022 IL App (2d) 210073-U, ¶ 98.

¶ 51    *Pizzo* also does not aid defendant, as it expressly stated that section 115-7.4 does not require the evidence to be independently corroborated. *Id.* ¶¶ 97, 99. It found that independent corroboration is a consideration when engaging in the probative versus prejudicial balancing test, noting "a lack of corroborating evidence could, in any given case, decrease the probative value of the other-crimes evidence, increase its risk of undue prejudice, or both." *Id.* ¶ 99. "However, section 115-7.4 does not *require* the other-crimes evidence to be independently corroborated." (Emphasis in original.) *Id.*

¶ 52    In determining any prejudice connected to the admission of such evidence, we thus consider that the allegations in the sworn statement in the petition for an order of protection were not independently corroborated. We also agree with defendant that the evidence casts him in a negative light, but section 115-7.4's requirement that the prejudice be " 'undue' is crucial because prosecuting the defendant necessarily entails adducing evidence prejudicial to the defendant." *People v. Kelley*, 2019 IL App (4th) 160598, ¶ 102 (discussing undue prejudice under section 115-7.3 of the Criminal Code, the parallel statute for sex offenses). The undue prejudice necessary to preclude the evidence under section 115-7.4 must therefore go beyond the inference that the statute allows. See *id.* ¶ 77 (" 'Undue prejudice' within the meaning of section 115-7.4(b) necessarily is prejudice other than that resulting from proof of the defendant's propensity to commit domestic violence, because the very purpose of section 115-7.4 is to lift the common-law ban on that particular kind of propensity evidence."); see, *People v. Walston*, 386 Ill. App. 3d 598, 615 (2008) (making a similar finding under section 115-7.3 of the Criminal Code, the parallel statute for sex offenses). Undue prejudice means that the guilty verdict was obtained based on the fact that defendant was bad and deserved punishment regardless of whether he committed the charged offense. *Kelley*, 2019 IL App (4th) 160598, ¶ 102 (discussing undue prejudice under section 115-7.3 of the Criminal Code, the parallel statute for sex offenses).

¶ 53    While Johnson testified to the previous instances of abuse, the testimony was brief, and the State did not overly discuss the details of the prior instances. The allegations in the sworn statement were not more severe than the allegations for the current offenses. We also keep in mind that as factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence. *People v. Donoho*, 204 Ill. 2d 159, 184 (2003). The other-crimes evidence here was related to the same victim and occurred within the six-month period prior to the current offenses.

The other-crimes evidence also included similar violent behavior, including choking Johnson, making threats, and attempting to preclude her from obtaining help. We further note "although the evidence necessarily casts defendant in a negative light, there is no suggestion that the jury's determination here was unduly based on hatred, contempt, or horror" (*People v. Nevilles*, 2021 IL App (1st) 191388, ¶ 81), particularly where defendant was found not guilty of aggravated domestic battery by strangulation.

¶ 54   Beyond propensity, the other-crimes evidence also provided probative value for other purposes, such as intent and absence of mistake or accident. *People v. Ross*, 2018 IL App (2d) 161079, ¶ 173; *Chapman*, 2012 IL 111896, ¶ 33; *Daniel*, 2022 IL App (1st) 182604, ¶ 132. It was also relevant to show the context of the actual relationship between Johnson and defendant. See *People v. Cheek*, 2021 IL App (2d) 200281-U, ¶ 89 (In a trial for domestic battery, the court found the "history and context of the relationship" was an appropriate basis for the jury to consider the evidence of other domestic violence.).

¶ 55   After engaging in the required balancing test, defendant has failed to convince us that the evidence of prior domestic violence would have been found inadmissible under section 115-7.4, given the similarities between the evidence of prior domestic violence and circumstances of this case. See *Pizzo*, 2022 IL App (2d) 210073-U, ¶ 112; *Ross*, 2018 IL App (2d) 161079, ¶ 173. Because defendant did not show that any objection based on relevancy, prejudice, other-crimes evidence rules, or section 115-7.4 of the code, would have likely been successful, he failed to prove counsel performed deficiently in failing to object on those bases. See *People v. Cerda*, 2021 IL App (1st) 171433, ¶ 133 ("defense counsel's failure to file this motion may properly be regarded as trial strategy, where counsel could have reasonably believed that the filing of such a motion would have been a futile act.").

¶ 56    We also reject defendant's ineffective assistance of counsel claims based on the failure to object on the basis of hearsay. Defense counsel's decision to not object to hearsay testimony is presumed a matter of trial strategy that will not typically support an ineffective assistance of counsel claim. *People v. Theis*, 2011 IL App (2d) 091080, ¶ 40. Defense counsel could have again wanted to avoid bringing more attention to the previous instances of domestic abuse by objecting based on hearsay (see, *People v. Evans*, 209 Ill. 2d 194, 221 (2004)), particularly where the State could have had Johnson provide a firsthand account of the prior abuse that led to the order of protection that was violated in this case. *People v. Perry*, 224 Ill. 2d 312, 345 (2007). Because defendant fails to point to anything indicating that counsel misunderstood the law regarding this issue, he fails to establish that counsel's failure to object based on hearsay was anything more than trial strategy. Defendant therefore failed to show that counsel was ineffective for failing to object to State exhibit No. 5.

¶ 57    Defendant contends, citing *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 67, that counsel was ineffective for failing to ensure the language of the IPI Criminal No. 3.14 was precisely tailored to fit the facts of the case before it. Defendant argues that the instruction here should have only referenced propensity, but the trial court included all potential grounds under which other crimes evidence could be relevant. He further argues that counsel's failure to object was not a matter of trial strategy where counsel did not offer the instruction during the instruction conference, then took a contrary position and did not object to the court providing the instruction to the jury.

¶ 58    Counsel here did not offer IPI Criminal No. 3.14 at the instruction conference. We find this was a strategic decision. *People v. Potts*, 2021 IL App (1st) 161219, ¶ 184 ("These are good reasons why the defense might not want this kind of instruction, no matter what issues it includes—

20

and especially when one of those issues is propensity.") (Emphases Omitted.) Nevertheless, we fail to see how this strategic decision to avoid the issue at the instruction conference meant that counsel provided deficient representation by failing to object to the same instruction at a later time. Counsel cannot be deemed unreasonable for making a futile objection. See *People v. Torres*, 2024 IL 129289, ¶ 28.

¶ 59 Jury instructions serve the important purpose of "convey[ing] the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). In reviewing jury instructions, we must determine whether the instructions, taken as a whole, "fully and fairly announce the law applicable to the theories of the State and the defense." *Id.* at 65. An attorney's decision on which jury instructions to tender is usually a matter of trial strategy that is generally immune from an ineffective assistance of counsel claim. *People v. Lemke*, 384 Ill. App. 3d 437, 450 (2008).

¶ 60 IPI Criminal No. 3.14 provides as follows:

"[1] Evidence has been received that the defendant[s] [(*has*) (*have*)] been involved in [(*an offense*) (*offenses*) (*conduct*)] other than [(*that*) (*those*)] charged in the [(*indictment*) (*information*) (*complaint*)].

[2] This evidence has been received on the issue[s] of the [(*defendant's*) (*defendants'*)] [(*identification*) (*presence*) (*intent*) (*motive*) (*design*) (*knowledge*) (_____)] and may be considered by you only for that limited purpose.

[3] It is for you to determine [whether the defendant[s] [(*was*) (*were*)] involved in [(*that*) (*those*)] [(*offense*) (*offenses*) (*conduct*)] and, if so,] what weight should be given to this evidence on the issue[s] of _____."

¶ 61    The court granted the State's motion *in limine*, which argued that the evidence of case No. 23-CF-1979 was probative to issues of "motive, intent, identity, lack of mistake, and modus operandi," as well as propensity. The instruction provided in this case follows the pattern instruction but refers to only propensity, identification, intent, motive, and lack of mistake. As noted above, evidence of prior domestic violence against the same victim can be admissible for any of these purposes. *Infra*, ¶ 54. The instruction thus properly states the law and adheres to the trial court's grant of the motion *in limine*.

¶ 62    Defendant nevertheless argues we should find the court only granted the admission of the evidence for propensity where the State orally argued for only propensity at the hearing on its motion *in limine*. Defendant fails to cite authority for this position. We thus decline to ignore the court's grant of the State's motion *in limine* in its entirety. Because any objection to the instruction would have been futile, counsel was not ineffective for failing to lodge it.

¶ 63    Defendant also argues that identity was not an issue where both Johnson and Officer Sikowski identified defendant and lack of mistake was not an issue where the evidence showed that defendant had affirmatively broken the front door and battered Johnson. He also argues that considering intent and motive would invite speculation as to retribution against Johnson for the prior conviction which was incompatible with her testimony that the pair had talked through what had happened for several hours. Defendant again has provided no authority to support the notion that a matter is not an issue at trial if the State presented other convincing evidence on the matter. Moreover, lack of mistake and defendant's motive and intent in breaking into the house were certainly issues at trial.

¶ 64    We further note that "the great fear of other-crimes evidence—and thus the reason for IPI Criminal 4th No. 3.14—is that the jury may consider other-crimes evidence for a propensity

22

inference." (Emphasis omitted.) *Potts*, 2021 IL App (1st) 161219, ¶ 187. As such, any prejudice stemming from additional references to non-propensity purposes for the other crimes evidence seems speculative given that the evidence was permissible for propensity. *e.g. id.* (noting that a limiting jury instruction improperly including other non-propensity reasons is often harmless error); *People v. Jones*, 2023 IL App (1st) 220126-U, ¶ 59 (IPI Criminal No. 3.14 has little to no value where other crimes evidence is permissible for propensity evidence because the usual purpose of IPI Criminal No. 3.14 is to prevent a jury from using other-crimes evidence for propensity); *People v. Perez*, 2012 IL App (2d) 100865, ¶ 59 (no error in failing to provide limiting instruction where the evidence was admissible for any relevant purpose under section 115-7.3).

¶ 65    For these same reasons, defendant's authority, *Johnson*, 2013 IL App (2d) 110535, is distinguishable. The instructions in *Johnson* allowed the jury to consider the other-crimes evidence as propensity although the court did not permit the evidence for that purpose. *Id.* ¶ 75. The protection against a propensity inference that is embedded in the IPI Criminal No. 3.14 was necessary in *Johnson*. No such protection was necessary here, as the evidence was admissible under section 115-7.4 of the Code for any relevant reason. Defendant therefore failed to prove counsel was ineffective on this basis.

¶ 66    We also reject defendant's contention that counsel was ineffective for failing to object to the inclusion of the third paragraph of IPI Criminal No. 3.14 that directs the jury to consider whether defendant was involved in the prior conduct. He contends that the instruction committee noted, "When the defense concedes that the defendant performed the conduct or committed the offense that is the subject of this instruction, the bracketed portion of paragraph [3] should not be given." IPI Criminal No. 3.14, Committee Comments (Approved Oct. 17, 2014). He argues that he admitted to his prior conduct through the admission of his certified convictions. Defendant

23

again cites to no authority to claim that he concedes an offense or conduct where the State presented evidence of a prior conviction. Moreover, defendant's certified conviction was for domestic violence with four prior domestic batteries and did not encompass all the conduct discussed in the sworn statement used to obtain the prior order of protection. Thus, even assuming a certified conviction concedes the defendant committed the act in case No. 23-CF-1979, the jury would still need to decide whether defendant actually committed the conduct alleged in the petition for an order of protection. The inclusion of the third paragraph was thus warranted, and we cannot say counsel was unreasonable for failing to object to it.

¶ 67    Defendant alternatively claims that the manner in which the evidence was presented may have given the jurors the erroneous impression that the allegations in State exhibit No.5 had been proven at a prior judicial proceeding. Defendant argues that because State exhibit No. 5 first contains the petition immediately followed by the order of protection, which was signed by a judge, the jury likely assumed the order of protection was granted based on the unsubstantiated allegations. We find no such inference and moreover note that the jury was instructed to decide whether defendant was involved with the prior conduct, and we presume the jury followed the instructions. *People v. Tapley*, 2020 IL App (2d) 190137, ¶ 81.

¶ 68    Accordingly, defendant has not established counsel provided objectively unreasonable representation. As such, defendant's claim of cumulative error has no merit. *People v. Castejon*, 2025 IL App (1st) 221918, ¶ 55.

¶ 69                    B. Excessive Sentence Claim

¶ 70    Defendant lastly claims that his 10-year sentence was excessive based on the circumstances of this case where there was no serious physical harm and he did not have prior significant periods of incarceration. He contends that where his conduct was the least serious version of conduct

24

constituting the charged offense, it was an abuse of discretion to impose a harsher sentence than the minimum without further justification.

¶ 71 In determining the sentence, the trial judge must consider all relevant factors in mitigation and aggravation, and "balance the retributive and rehabilitative purposes of the punishment." (Internal quotation marks omitted). *People v. Weiser*, 2013 IL App (5th) 120055, ¶¶ 31-32. However, the defendant's rehabilitation potential is not entitled to more weight than the aggravating factors. *Id.* ¶ 32. The trial court is afforded great discretion when imposing a sentence, because—unlike a reviewing court—it has an opportunity to weigh such factors as "defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. Consequently, a reviewing court may not overturn a sentencing decision because it might have weighed the factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentencing decision will be overturned only where a trial court abuses its discretion. *Id.* at 209-10.

¶ 72 A sentence that falls within the statutory limits is presumed proper. *Etherton*, 2017 IL App (5th) 140427, ¶ 28. The presumption is rebutted only where a defendant demonstrates that the sentence imposed "greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.* In this case, the most severe conviction was for home invasion, which is a Class X felony. 720 ILCS 5/19-6(a)(2), (c) (West 2022). As such, the applicable sentencing range was 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25 (West 2022). Defendant's sentence of 10 years' imprisonment falls within that range and therefore is presumed proper.

¶ 73 We agree that this home invasion was not the worst-case scenario, but defendant is incorrect in stating that he engaged in the most minimum conduct for that offense. The severity of

Johnson's injuries does not necessarily reflect the severity of defendant's conduct. Defendant's entry into the home stemmed from breaking in the front door, and once inside the home, defendant dragged the victim—who had an order of protection against defendant—and battered her.

¶ 74    We moreover note that defendant only stopped assaulting the victim because the police arrived. Citing *People v. Jones*, 2024 IL App (1st) 221555, ¶ 78 (appeal denied, judgment vacated on other grounds, *People v. Jones*, No. 131071 (Ill. May 28, 2025) (supervisory order)), defendant argues this court should not speculate any harm that would have occurred had officers not intervened. Not only was *Jones* vacated by Illinois Supreme Court (*Jones*, No. 131071 (Ill. May 28, 2025) (supervisory order)), it also does not stand for a general rule that any finding of future harm would be speculative. Indeed, the court in *Jones* found the record in that case did not support a finding that future harm would have resulted. *Jones*, 2024 IL App (1st) 221555, ¶ 78. To the contrary, here, the evidence showed that defendant was actively harming Johnson until the officer intervened. The record therefore supports finding that defendant would have continued to harm Johnson and *Jones* is distinguishable. Accordingly, this case presents much more than the minimum conduct required to violate the statute.

¶ 75    As admitted in defendant's brief, the record further supports finding defendant had a low rehabilitative potential given his disregard for court orders and previous criminal history. Despite the record, defendant argues that the minimum applicable sentence here already guaranteed a significant increase over his previous most serious sentence of only one year in prison. He further argues that most of his criminal history was over 45 years ago. While acknowledging the most recent criminal history was relevant, defendant contends that the court failed to account that he had not had an opportunity since that conviction to engage in any form of treatment to address the underlying issues which informed his abusive behavior. We find his arguments unpersuasive.

26

¶ 76 The absence of a criminal history or leading a law-abiding life for a substantial period of time before the commission of the present crime are mitigating factors (see 730 ILCS 5/5-5-3.1(a)(7) (West 2024)). Neither apply here. A history of criminal activity is a statutorily enumerated aggravating factor. *Id.* § 5-5-3.2(a)(3). Therefore, consideration of defendant's criminal history, even of that 45 years ago, was relevant. Although there were periods of being law-abiding throughout his criminal history, it remains that defendant has repeatedly violated the law throughout his life—including committing similar offenses within the year prior to the convictions here—despite the numerous previous opportunities for rehabilitation. Assuming *arguendo* that defendant had no opportunity to address the underlying issues of his abusive behavior after his sentence in case No. 23-CF-1979, such fact is of no consequence. Defendant knew of his violent behavior as early as his first domestic battery misdemeanor in 2006 and nevertheless committed several more domestic abuse offenses throughout his life.

¶ 77 We further reject defendant's argument that he is somehow entitled to the lowest possible term of imprisonment where he had not previously been sentenced to longer than one year. He provides no authority for this position. Nor do we know of any authority imposing such a rule.

¶ 78 Overall, defendant disregarded a court order of protection and his probation terms—as he had done numerous times before—to kick down a door and harm Johnson. He not only has a criminal history but also a history of domestic abuse, including other crimes against Johnson. Despite the previous opportunities to lead a law-abiding life, defendant continues to engage in unlawful and violent behavior. Under these circumstances, we find the trial court did not abuse its discretion in sentencing defendant four years above the minimum.

¶ 79                                    III. CONCLUSION

¶ 80    Defendant's ineffective assistance of counsel claims fails where he did not rebut the presumption that defense counsel's failure to State exhibit No. 5, object to the IPI Criminal No. 3.14 used in this case, and impeach a witness, were matters of trial strategy. Given the circumstances of this case and his criminal history, his total 10-year sentence was not excessive. Accordingly, we affirm defendant's conviction and sentence.


¶ 81    Affirmed.